SEATTLE AUDUBON SOCIETY,
et al., Plaintiffs,

v.

James R. MOSELEY, et al., Defendants,

and

Washington Contract Loggers
Association, et al., Defen-
dants–Intervenors.

No. C92–479WD.

United States District Court,
W.D. Washington,
at Seattle.

July 21, 1992.

Order Setting Schedule for
Compliance Aug. 17, 1992.

Todd D. True, Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiffs.

Christopher Lee Pickrell, U.S. Attys. Office, Seattle, Wash., Wells Burgess, U.S. Dept. of Justice, Environment and Natural Resources Div., General Litigation Section, Beverly Sherman Nash, Washington, D.C., for defendants.

Mark C. Rutzick, Preston, Thorgrimson, Shidler, Gates & Ellis, Portland, Or., for intervenors-defendants.

## ORDER ON MOTIONS FOR STAY PENDING APPEAL

DWYER, District Judge.

Defendants James R. Moseley, et al. ("Forest Service") and defendants-intervenors Washington Contract Loggers Association, et al. ("WCLA") have filed notices of appeal from the Memorandum Decision and Injunction of July 2, 1992 ("July 2 decision") (Dkt. # 181), and from the Order on Cross–Motions for Summary Judgment, etc. ("May 28 order") (Dkt. # 138). The Forest Service and WCLA now move for a stay of the injunction pending appeal. Plaintiffs Seattle Audubon Society, et al. ("SAS") oppose a stay. All materials filed in support of or opposition to the motion have been fully considered.

The court may suspend or modify an injunction during the pendency of an appeal. Fed.R.Civ.P. 62(c). The standard, set out in *Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir.1983), is similar to that employed in deciding whether to issue a preliminary injunction. The prospects for success on appeal, the possibility of irreparable injury, the balance of hardships, and the public interest must all be weighed.

There are two parts to the injunction issued on July 2. One part enjoins the Forest Service from auctioning or awarding additional timber sales in Regions Five and Six that would log suitable habitat for the northern spotted owl until revised standards and guidelines in compliance with the governing statutes are adopted and in effect. *See* July 2 decision at 18. A stay of that part of the order would allow additional logging sales in old growth habitat areas in the national forests to go forward despite the ruling that this cannot be done without a legally-adopted plan. The resulting harm would be irreparable. Nothing has been presented as to the prospects on appeal, or as to relative hardship or the public interest, that would justify a stay. *See* July 2 decision at 11–15.

The other part of the injunction directs the Forest Service to prepare a new or supplemental environmental impact statement ("EIS") in compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, curing the defects listed in the May 28 order; requires the adoption of a new record of decision ("ROD") following completion of the EIS; and directs the Forest Service to file by July 14, 1992, its proposed schedule for the completion of those steps. *See* July 2 decision at 17–18. The filing of the schedule has been deferred pending a ruling on the present motion. *See* Order Granting Forest Service's Motion to Shorten Time and Setting Schedule on Motion for Stay Pending Appeal (July 13, 1992) (Dkt. # 191). In

asking that this part of the injunction be stayed, the Forest Service argues that the court has no power to order it to perform specific tasks or to complete them by a specified time, that the time for compliance in any event should be left to the agency's discretion, and that compliance will be expensive and difficult and should be deferred pending appeal.

■ The Supreme Court has held that a district court has the authority to "order the relief it considers necessary to secure prompt compliance" with the law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320, 102 S.Ct. 1798, 1807, 72 L.Ed.2d 91 (1982). *See also Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542. Federal courts have often found it necessary to order administrative agencies to take particular steps, *see, e.g., Abramowitz v. EPA*, 832 F.2d 1071, 1078–79 (9th Cir.1987), and to do so by specified times, *see, e.g., Alaska Ctr. for the Environment v. Reilly*, 796 F.Supp. 1374, (W.D.Wash. 1992); *Sierra Club v. Ruckelshaus*, 602 F.Supp. 892, 898–99 (N.D.Cal.1984). To hold that courts cannot do this would invite lawlessness; an agency could escape its statutory duties simply by procrastinating. *See* July 2 decision at 16–17, and cases cited.

■ The record in this case and in *SAS v. Evans*, 952 F.2d 297 (9th Cir.1991), shows a long history of delays by the Forest Service. The National Forest Management Act set a 1985 target date for the adoption of standards and guidelines for all national forest units. 16 U.S.C. § 1604(c). That date was not met. In October 1989 Congress directed in section 318 that the agency have a spotted owl plan in place by September 30, 1990. That was not done. In *SAS v. Evans*, 771 F.Supp. 1081, 1090–91, the agency sought sixteen more months and was afforded eleven more months to issue an EIS and ROD. The job was not done in compliance with NEPA. The agency has argued that it need not do what the laws plainly require it to do. *See, e.g., SAS v. Evans*, 952 F.2d 297, 301–302 (9th Cir. 1991). In light of this history, a timetable is essential.

To comply promptly with the July 2 injunction is well within the Forest Service's capability. It has the scientists who can do the job. The injunction simply requires a new or amended EIS in compliance with NEPA, curing the three defects specified in the May 28 order. One of these is the need, expressed by the Forest Service in the current EIS, to reassess the viability rating if the Endangered Species Committee were to authorize Bureau of Land Management timber sales in Oregon that would jeopardize the spotted owl. The Acting Assistant Secretary of Agriculture for Natural Resources and Environment stated in a declaration dated May 21, 1992, that he had "directed the Forest Service to contact the EIS team to consider the effect of the ESC decision on the viability assessment" and had been notified that "it would take four to eight weeks" to get a report back to him. *See* May 28 order at 13. It thus appears that the needed information could be quickly gathered if it has not been already. There is also no reason why the alternatives could not be reviewed expeditiously in light of the Anderson and Burnham report. As to the low viability rating for other vertebrate species quoted in the current EIS, the Forest Service argues that it should not have to do a separate viability study on every such species; but the court has already made clear that there is no such requirement. *See* July 2 decision at 9. What is required is that the plan adopted not be one which the agency knows or believes will probably cause the extirpation of other native vertebrate species in the planning areas.

■ Difficulty of compliance will not permit an agency to avoid its duties under NEPA. *See Calvert Cliffs' Coordinating Comm., Inc. v. Atomic Energy Comm'n*, 449 F.2d 1109, 1115 (D.C.Cir.1971). But in any event the difficulties claimed here are highly exaggerated, and not such as to justify the further delay that would result from a stay.

■ For the reasons stated, the motions for a stay of the July 2, 1992, injunction pending appeal are denied. The Forest Service has asked that a week be allowed

for it to seek a stay in the court of appeals. Two weeks will be allowed for that purpose. Accordingly, the date for the Forest Service to file its proposed schedule for completion of the steps required by paragraph VII–A of the injunction is extended to August 4, 1992; any comments on the schedule by the other parties will be due on August 7, 1992.

## ORDER SETTING SCHEDULE FOR COMPLIANCE

In response to the *Order on Motions for Stay Pending Appeal* entered July 21, 1992 (Dkt. # 207), the Forest Service filed on July 31 its proposal as to a compliance schedule, and SAS filed its comments on the proposal on August 7, 1992. WCLA has not commented.

The Forest Service requests a compliance period of twenty-four months, but says even that must be tentative because "it is not possible to commit to a date certain for completion." Declaration of James C. Overbay, Deputy Chief, National Forest System, ¶ 10 (Dkt. # 213). Thus it seeks an extension to at least August 1994 to complete the job Congress ordered it to finish by September 1990.

The reasons for this request fall into two categories. The first is the time required for statutory and regulatory minimums, summarized by the agency as follows:

> Compliance with statutory and regulatory minimums requires at least five (5) months. The National Forest Management Act (NFMA) requires at least a three (3) month comment period on a draft EIS, 16 U.S.C. 1604(d); the Council on Environmental Quality regulations require a minimum of 90 days between draft and final EISs and 30 days between publication of the final EIS and the Record of Decision, 40 CFR 1506.10; and the NFMA requires 30 days between the signing of the ROD and its effective date, 16 U.S.C. 1604(j).

Declaration of James C. Overbay, ¶ 3 (Dkt. # 213).

The second category of reasons for delay consists of alleged difficulties in complying: The Anderson and Burnham report has not been "finalized"; the Bureau of Land Management ("BLM") has not completed its separate planning process; the Fish and Wildlife Service ("FWS") has not yet acted on a proposal to list the marbled murrelet as threatened or endangered, and has not issued a final recovery plan for the northern spotted owl; it would take a long time to "develop regional standards and guidelines for other species in the owl conservation strategy," and the agency "does not know how long it might take to address these other species at the regional level, if it is indeed even possible"; Congress may cut the Forest Service's budget next year; and time will be needed to assess information and comments received.

A reasonable time should be provided for the Forest Service to evaluate information and comments. Beyond that none of the arguments made would justify further delay.

■ The Anderson and Burnham report in its present form was deemed likely by some government experts to require a lower viability rating for the ISC strategy, and was mentioned in the FEIS and ROD. The difficulty was that the FEIS lacked a reasoned analysis and response. *See* Order on Cross–Motions for Summary Judgment, etc., section V–C–2 (May 28, 1992) (Dkt. # 138). That shortcoming can be corrected without waiting for the Anderson and Burnham report to be "finalized."

■ As for the BLM sales, the EIS stated that the viability rating would have to be reassessed if the Endangered Species Committee authorized timber sales in Oregon that would jeopardize the spotted owl. There is no reason to wait to analyze the effect of the sales already authorized; as for the future, there seems to be no reason why the Forest Service and the BLM, parts of the same executive branch, cannot coordinate their efforts.

■ There is no need for the agency to wait for the FWS to decide about listing the marbled murrelet, or to adopt its recovery plan for the spotted owl under the Endangered Species Act. The Forest Service as steward of the national forests can

and should carry out its planning duties under the National Forest Management Act.

As for the effects of an owl plan on other native vertebrate species, the court has repeatedly made clear that the agency is not required to make a study or develop standards and guidelines as to every species. The Forest Service has expertise in wildlife management. What is required is that it refrain from adopting an owl plan which it knows or believes, as a matter of common sense or agency expertise, will probably cause the extirpation of other native vertebrate species. *See* Order on Cross–Motions for Summary Judgment, etc., section V–C–3 (May 28, 1992) (Dkt. # 138); Memorandum Decision and Injunction, section III (July 2, 1992) (Dkt. # 181).

Finally, the prospect of a budget cut should not delay the completion of a duty as long-postponed by the agency, and as important to the public, as this one.

A period of eight months, in addition to the five months required for statutory comment, publication, and waiting periods, is reasonable for the defendants to complete the process. The Forest Service is therefore enjoined to prepare a supplemental EIS in compliance with NEPA, curing the defects identified in the May 28, 1992, summary judgment order, in time for defendant Moseley to adopt a new ROD by August 20, 1993, to be in effect thirty days thereafter. It is further ordered that the Forest Service serve on all parties and file reports on the steps it has taken to comply with this order, and on the steps it plans to take to finish compliance, on November 20, 1992; February 26, 1993; and May 21, 1993. Any comments by the other parties on these reports will be due one week after they are filed. All parties have leave to seek modifications or additions to the requirements contained in this order.