For the reasons stated, this appeal is dismissed.

MOORE, District Judge, concurring.

I write separately to remind counsel that appeals from the Territorial Court to the Appellate Division of the District Court of the Virgin Islands are no longer governed by the Federal Rules of Appellate Procedure ["FRAP"].

Specifically, this case demonstrates the significance of the promulgation by the Appellate Division of the Virgin Islands Rules of Appellate Procedure ["VIRAP"] on November 1, 1998. Appellant's notice of appeal would have been timely if the VIRAP had been in effect at the time it was filed. VIRAP is a comprehensive and self-contained set of rules governing appeals from the Territorial Court to the Appellate Division of the District Court of the Virgin Islands. One of the aims of VIRAP was to reduce, if not eliminate, any confusion caused by inconsistencies and outright conflicts between the time calculations applicable to proceedings in the Territorial Court under its Rules and FRAP. Since this appeal was filed before November 1, 1998, it is governed by FRAP.[2] FRAP 4 required that appellant's notice of appeal be filed within ten **calendar** days after entry of judgment or order. *See* FED. R.APP.P. 4(b).[3] Since appellant filed his appeal on January 28, 1998, fourteen **calendar** days after the judgment was entered, his appeal was untimely and this Court is without jurisdiction to consider it. This appeal would have been timely if VIRAP had been in effect, because VIRAP 16(b) extends the exclusion of weekends and holidays to time periods of ten days.[4]

**William CAPACCHIONE, Individually and on Behalf of Cristina Capacchione, a Minor, Plaintiff,**

**and**

**Michael P. Grant et al., Plaintiff-Intervenors,**

**v.**

**CHARLOTTE–MECKLENBURG SCHOOLS et al., Defendants.**

**James E. Swann et al., Plaintiffs,**

**v.**

**Charlotte–Mecklenburg Board of Education et al., Defendants.**

Nos. 3:97–CV–482–P, 3:65–CV–1974–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Nov. 15, 1999.

---

days and legal holidays shall be excluded from the computation.... V.I.R.APP P. 16(b); TERR.CT R. 9. Had the Virgin Islands Rules of Appellate Procedure been effective, this appeal would have been timely filed.

2. *See* LRCi 76.1 ("Rules of Practice in Appellate Division: Practice in the Appellate Division of the District Court of the Virgin Islands of the United States shall ... be governed by the Federal Rules of Appellate Procedure....") (in effect from July 21, 1992 until November 1, 1998).

3. Weekends and holidays are not excluded for FRAP 4's time period of 10 days. *See* FED. R.APP.P. 26(a) ("When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.") (emphasis added).

4. *See* V.I.R.APP.P. 16(b) ("When the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays and legal holidays shall be excluded from the computation."). Appellant may well have been confused by the more liberal rule operating in the Territorial Court, which allows the exclusion of intermediate Saturdays, Sundays and holidays when a pleading must be filed within 10 days. *See* TERR. CT.R. 9 ("When a period of time prescribed or allowed by these rules is less than **eleven** days, intermediate Saturdays, Sundays and legal holidays shall be excluded from the computation.") (emphasis added). With the promulgation of VIRAP, there is no longer any confusion or conflict in the rules governing trial and appeal of local matters.

John O. Pollard, Kevin V. Parsons, McGuire, Woods, Battle & Boothe, L.L.P., Charlotte, NC, William S. Helfand, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, P.L.L.C., Houston, TX, Lee Meyers, Meyers & Hulse, Charlotte, NC, for William Capacchione.

James E. Ferguson, Luke Largess, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, Adam Stein, Ferguson Stein Wallas Adkins Gresham & Sumter, P.A., Charlotte, NC, Adam Stein, Ferguson Stein Wallas Adkins Gresham & Sumter, Chapel Hill, NC, Elaine Jones, Norman J. Chachkin, Gloria J. Browne, NAACP Legal Defense & Educational Fund, Inc., New York City, for Swann Plaintiffs.

James G. Middlebrooks, Irving M. Brenner, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, Allen R. Snyder, Kevin J. Lanigan, Maree Sneed, Rose Marie L. Audette, Hogan & Hartson, L.L.P., Washington, DC, Leslie J. Winner, Charlotte–Mecklenburg Board of Education, Charlotte, NC, for defendants.

A. Lee Parks, K. Lee Adams, Kirwan, Parks, Chesin & Miller, P.C., Atlanta, GA, Thomas J. Ashcraft, Charlotte, NC, for intervenor-plaintiffs.

## ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on defendants Charlotte–Mecklenburg Board of Education, et al.'s (the "Board") Motion to Stay and for Additional Relief, and plaintiffs James E. Swann, et al.'s (the "Swann Plaintiffs) Motion for Stay".

### I.

### BACKGROUND

On September 9, 1999, this Court filed its Memorandum Opinion and Order (the "Order") in this case, and Judgment in accordance with the Order. The Order declared that defendant Charlotte Mecklenburg Schools ("CMS") had achieved "unitary status" and, therefore, vacated and dissolved all prior injunctive orders. Order, p. 114. This declaration freed CMS from the Court's supervision and granted it the opportunity to administer Mecklenburg County schools in a way it deemed best for the children, teachers, and educational system as a whole. The Order also found unconstitutional CMS's practice of assigning magnet students via a strict race-based lottery. Order, p. 111. Accordingly, the Court enjoined CMS from "assigning children to schools or allocating educational opportunities and benefits through race-based lotteries, preferences, set-asides, or other means that deny students an equal footing based on race." Order, p. 114.

On October 7, 1999, the Swann Plaintiffs filed a Notice of Appeal of the Court's Order. On October 8, 1999, the Board filed its Notice of Appeal.

On October 14, 1999, the Board filed the instant Motion to Stay and for Additional Relief. In its Motion, the Board seeks a limited stay, pursuant to Rule 62 of the Federal Rules of Civil Procedure, "of the effective date of the injunction in this case until the beginning of the 2001–02 academic year." Board's Motion, p. 2. The Board's Motion also seeks clarification and requests this Court to interpret its Order in a way that five categories of students may be "grandfathered" and not affected by the injunction. Specifically, "[t]he Board asks that rising fifth, eighth, and twelfth grade students be permitted to stay in their current schools; that the current ninth-graders who will be assigned to one of the two new high schools in 2001–02 be allowed to stay in their current schools until that assignment; and that current magnet students not be displaced, but instead be permitted to continue in their magnet programs through the completion of their current school level." Id. at 4. Alternatively, the Board seeks relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure to allow these categories of students to continue in their current school or program. Id. at 19–20.

On October 29, 1999, the Swann Plaintiffs filed their instant Motion for Stay of the Court's Order. Utilizing the same arguments as set forth in the Board's Motion, the Swann Plaintiffs' Motion differs in that it seeks a full stay pending appeal, as opposed to the Board's requested limited stay of one year. Swann Plaintiffs' Motion, p. 2.

On October 29, 1999, William Capacchione, as Guardian for Cristina Capacchione, a minor, and Michael P. Grant, et al. (collectively the "Plaintiff–Intervenors") filed a Response

to the Board's Motion for Stay and for Additional Relief. On November 4, 1999, the Board filed its Reply Brief in support of its Motion. On November 5, 1999, the Swann Plaintiffs filed a Corrected Reply to the Plaintiff–Intervenors' Response to the Board's Motion for Stay. On November 8, 1999, the Plaintiff–Intervenors filed a Response to the Swann Plaintiffs' Separate Motion for Stay.

## II.

### *DISCUSSION*

#### A. *Motion For Stay*

■■■■ The Board and the Swann Plaintiffs move the Court, pursuant to Rule 62 of the Federal Rules of Civil Procedure, to stay the injunction in this case pending appeal. The parties agree as to the factors this Court must consider in making its determination. They are as follows:

1. Whether the applicant will be irreparably injured absent a stay;

2. Whether the applicant has made a strong showing that he is likely to succeed on appeal;

3. Whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and

4. Whether the public interest will be served by granting the stay.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir.1970).

Upon balancing these factors and the facts of this case, and recognizing that stays in desegregation cases are rarely granted, the Court will deny the Board's and the Swann Plaintiffs' requests for a stay. *See Coppedge v. Franklin County Bd. of Educ.,* 293 F.Supp. 356, 362 (E.D.N.C.1968) *aff'd,* 404 F.2d 1177 (4th Cir.1968).

#### 1. **Irreparable Injury To Applicant**

The Board and the Swann Plaintiffs contend that they, as well as the students of Mecklenburg County, will suffer irreparable injury if a stay is denied. The Board and the Swann Plaintiffs allege that to comply with the Order, the Board must develop an entirely new student assignment plan. The Board and Swann Plaintiffs argue that this "monumental change" requires a great deal of time to develop and implement. *See* Board's Motion, p. 7. They, therefore, make the conclusory assertion that denying their request for a stay will have a "potentially devastating impact." *Id.* at 6.

As the Plaintiff–Intervenors point out, the Board's and the Swann Plaintiffs' panicked allegations of irreparable harm "are riddled with ... generalized contingencies, speculation, possibilities and outright guessing." Plaintiff–Intervenors' Response, p. 12. The Board's own evidence clearly indicates that it can implement a constitutional student assignment plan for the 2000–01 school year. Affidavit of Dr. Eric J. Smith, filed Oct. 14, 1999, p. 6, ¶ 15.

■■■ The Court recognizes that compliance with the Order involves some degree of administrative legwork. Administrative burdens, however, are insufficient to warrant a stay of this Court's injunction. *See Long, supra,* 432 F.2d at 978–80. Notably, in issuing its Order, the Court was sensitive to the potential period of temporary instability that the injunction could cause certain students of Mecklenburg County. For that reason, the Court stated that its Order would not disrupt pupil assignments already made for the 1999–2000 school year. Order, p. 111 n. 52.

The Board may make some comprehensive changes in CMS during the period of transition from being under desegregation orders to having the autonomy of a unitary system. The Board and Swann Plaintiffs failed to establish that the potential harm from such changes would be irreparable. The extent of the "harm" is ultimately in the hands of the Board and CMS. Furthermore, irreparable harm is but one factor the Court must consider in determining whether to stay the injunction. Weighing all of the factors in this case, and given that the Board acknowledges that it can implement a constitutional assignment plan for the 2000–01 school year, the Court finds that a stay is not warranted.

## 2. Likelihood Of Success On Appeal

The Board and the Swann Plaintiffs contend that the Order presents several appealable issues. They contend that they are likely to prevail in their appeal of these issues. This Court will address each issue in turn and illustrate the fallacies in the Board's and the Swann Plaintiffs' arguments.

First, the Board and the Swann Plaintiffs argue that the Plaintiff–Intervenors were not entitled to a finding of a constitutional violation because the magnet admission policy deemed unconstitutional was adopted in pursuit of compliance with the then existing *Swann* desegregation orders. The Board and the Swann Plaintiffs contend that the *Swann* desegregation orders required the Board and CMS to use racial criteria in school admission policies. The Board and the Swann Plaintiffs reason that actions pursuant to the *Swann* orders to remedy past discrimination cannot give rise to independent liability.

As set forth at length in the Order, however, this "immunity" has its limits in that one "cannot enjoy immunity for *ultra vires* acts—that is, acts that are beyond the scope of the Court's mandate and that are not otherwise constitutionally authorized." Order, p. 98. The area of liability in this case "is the use of rigid racial quotas." *Id.* at 99. "One of the most basic tenets underlying *Swann* was that the use of mathematical ratios in desegregation plans could be used as a 'starting point' but could not be used as an 'inflexible requirement.'" *Id.* (citations omitted).

What the Board and the Swann Plaintiffs apparently still fail to realize by appealing this issue is that "CMS ran the risk of exposure to liability when, in instituting its magnet program without seeking judicial approval, it implemented a new regime of rigid race-based assignment procedures." *Id.* at 100. "This change in the student assignment process was a material departure from the *Swann* orders." *Id.* at 101. Therefore, the Board and CMS cannot cloak themselves under the veil of the *Swann* orders in avoiding constitutional liability to the Plaintiff–Intervenors.

Second, the Board and the Swann Plaintiffs argue that the injunction is overbroad. In this regard, they contend that the factual underpinning of this case was the magnet admission program. They suggest that because the injunction covers other admission policies and instructional programs, it is impermissible.

As the Board correctly points out, "[t]he Court of Appeals for the Fourth Circuit has repeatedly recognized that trial courts should limit the scope of their injunctions to the specific violation found." Board's Motion, p. 11. In this case, the violation found was the Board and CMS's practice of allocating educational opportunities and benefits through a strict race-based lottery that operated as an inflexible quota. In prohibiting this type of admissions practice, the Court took into consideration that CMS had achieved unitary status. The declaration of unitary status necessarily affected the scope of future prohibited activity because, in a non-remedial, unitary status setting, the use of race is *a fortiori* unconstitutional. Order, p. 1. Contrary to the arguments of the Board and the Swann Plaintiffs, it is irrelevant that the Court's injunction may encompass violations that occur outside of the magnet program. Indeed, it would be meaningless for this Court to prohibit a constitutional violation in one setting, but allow it in another, simply because an educational program is known by a different name.

Moreover, the Board is incorrect in its assertion that only the magnet school program was before the Court. As the Board is well aware, this case was consolidated with the three decade old case *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 311 F.Supp. 265 (W.D.N.C.1970). *Swann* obligated this Court to consider the comprehensive educational policies of CMS and whether it had achieved unitary status.

The injunction addresses the violation before the Court in this case and is rooted in the Court's duty to enforce the Fourteenth Amendment's guarantee of equal protection. It goes no further than necessary.

Third, the Swann Plaintiffs contend that the injunction is unauthorized in that it "addresses the issue of how the district might

assign students after a unitary status declaration." Swann Plaintiffs' Motion, p. 10. The Swann Plaintiffs contend "[t]hat question simply was not a case or controversy at the trial." *Id.*

The Swann Plaintiffs fundamentally misread the Order. The Court declared CMS unitary. Order, p. 97. The Order expressly relinquished the Court of supervisory authority over the Board and CMS. In this regard, the Court stated that it "will not demand clearance of any future student assignment plans prior to implementation." *Id.* at 109. The Swann Plaintiffs' misguided suggestion that the Order is a detailed blueprint of how the Board should assign students in the future is without merit. The Order, as discussed above, simply offers the foundational guideline that student assignments occur within the confines of the Fourteenth Amendment. This basic constitutional requirement does not render the injunction "unprecedented," as the Swann Plaintiffs indicate they will argue on appeal. Swann Plaintiffs' Motion, p. 10.

Finally, the Swann Plaintiffs declare that they will successfully appeal the Court's declaration that CMS achieved unitary status, and the standard of review the Court utilized in making its finding that CMS's raced-based practices constituted a constitutional violation. The Swann Plaintiffs' arguments in this regard are a mere rehashing of their arguments in pre-trial briefs and at trial. They are addressed at length in the Court's Order and do not warrant discussion here.

Therefore, the Board and the Swann Plaintiffs have failed to make a strong showing of likelihood of success on appeal.

### 3. Substantial Injury To Interested Parties

The Court disagrees with the Board and the Swann Plaintiffs' assertion that the issuance of a stay will not substantially injure the Plaintiff–Intervenors and other interested parties. The Court prohibited the Board and CMS from assigning and transferring students, or allocating educational resources, based solely on race. The Court reasoned that the Board and CMS's strict race-based policies deprived students of their rights under the Equal Protection Clause. The Court agrees with the Plaintiff–Intervenors that denial of equal protection rights is a deprivation of a right fundamental to our constitutional system. A stay in this case would allow the Board and CMS to continue infringing upon students' equal protection rights. Therefore, a stay in this case would substantially injure the Plaintiff–Intervenors and similarly situated third parties.

### 4. Public Interest

The Board and the Swann Plaintiffs' argument that the public interest will be served by the granting of a stay is likewise unpersuasive. The Court finds that it is not in the public interest to further subject the more than 100,000 Mecklenburg County students to unconstitutional strict racial balancing guidelines. This is especially true given that CMS has achieved unitary status. Therefore, the Court will deny the Board and the Swann Plaintiffs' requests for a stay.

### B. *Motion For Clarification*

■ The Board requests that the Court clarify whether its injunction can be interpreted to allow "grandfathering," that is, to allow five categories of students to continue in their current schools through completion of their current school level.

■ A post-judgment motion for clarification requesting a court to interpret the scope of its injunction is properly made under Rule 59(e) of the Federal Rules of Civil Procedure, as opposed to Rule 60. *Birdsong v. Wrotenbery,* 901 F.2d 1270, 1272 (5th Cir.1990). Any motion pursuant to Rule 59(e) "shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e); *see also* Fed.R.Civ.P. 6(b) ("[T]he court … may not extend the time for taking any action under Rule [ ] … 59(e).").

In *Birdsong,* the plaintiffs alleged that Texas' Administrative Services Tax ("ASTA") was preempted by section 514 of ERISA and sought the return of taxes paid under ASTA. The federal District Court granted summary judgment in favor of the plaintiffs. The judgment enjoined the defendants, various Texas State authorities, from

seeking to collect from any of the plaintiffs the tax authorized by ASTA in any administrative or judicial proceedings related to ASTA. The defendants filed a post-judgment motion for clarification, explaining that a pending state court action challenging ASTA involved one of the plaintiffs in the federal suit. The defendants asked the Court to specifically set out whether the injunction was designed or intended to prohibit the continuation of the state court proceedings.

The first issue before the *Birdsong* Court was whether the motion for clarification was made pursuant to Rule 59(e) or Rule 60. The Court held that "defendants' motion was not collateral but went directly to the scope of the injunction. For this reason, the motion is not a Rule 60(a) motion, and thus falls under the umbrella of Rule 59(e)." *Id.*

Here, as the defendants in *Birdsong*, the Board's Motion for Clarification goes directly to the scope of the injunction. The Board is asking the Court to interpret its injunction to grandfather the five relevant categories of students. Therefore, under *Birdsong* and the express language of Federal Rules of Civil Procedure, the Board's Motion is made pursuant to Rule 59(e).

■ The judgment was entered in this case on September 9, 1999. The Board's Motion for Clarification was filed on October 14, 1999, more than 10 days after the entry of the judgment. Therefore, the Board's Motion is impermissibly late and the Court, due to the Board's own procedural error, is barred from considering the Motion for Clarification.

## C. *Motion For Relief From Order*

■ In the alternative to the Motion for Clarification, the Board seeks the same relief for the five categories of students pursuant to Rule 60(b)(6). Rule 60(b)(6) allows a court in its discretion to achieve justice by relieving a party from a final judgment. The Court agrees with the Plaintiff–Intervenors that it would not be in the interest of justice to grant the Board's Rule 60(b)(6) Motion because the Court is not informed of the specifics of the Board's grandfathering plan. There are simply too many unanswered

questions for the Court to give its stamp of approval. In that regard, the Board's Rule 60(b)(6) Motion is unjustified.

Furthermore, the Motion is unnecessary. The Court's Order released the Board from Court interference in implementing policies and running Mecklenburg County schools. Indeed, the Order attempted to avoid such entanglement by clearly stating "the Court will not demand clearance of any future student assignment plans prior to implementation." Order, p. 109. The Board must come to understand this language and resist its temptation, thirty years in the making, to request Court authorization for various educational policies.

The Order is clear. It prohibits assigning children to schools or allocating educational opportunities and benefits through strict race-based lotteries, preferences, set-asides, or other means that deny students an equal footing based on race. *Id.* at 114. Although its authorization is not needed, the Court will state in the abstract that the Order does not prohibit voluntary school choice. If the Board wants, as it suggests, to offer its students the *voluntary option* of either staying in their school or program or accepting their new assignment, and can do so in a race neutral way, the Court sees nothing in its Order that prohibits such a practice. *See* Board's Reply, p. 7. The Plaintiff–Intervenors agree. Plaintiff–Intervenors' Response, p. 3. Any assignment, transfer, or decision to leave a student in his or her current school, however, must conform with the Constitution and the Order by avoiding strict race-based lotteries, preferences, set-asides, or other means that deny students an equal footing based on race.

The Board is the body elected by the people of Mecklenburg County to run its schools. The Court's Order granted the Board the local control that school boards across the country desire to freely operate and manage their schools. The Board, along with the people and parents of Mecklenburg County, have an unprecedented opportunity to set the agenda of Mecklenburg County schools that will benefit the County's children for decades to come. This Court can only hope that it does so.

NOW, THEREFORE, IT IS ORDERED that the Board's Motion for Stay and for Additional Relief be, and hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that the Swann Plaintiffs' Motion for Stay be, and hereby is, **DENIED.**

The Clerk is directed to certify copies of this Order to all parties.