SWAN VIEW COALITION, Friends of the Wild Swan, Native Ecosystems Council, and Alliance for the Wild Rockies, Plaintiffs,

v.

Chip WEBER, Flathead National Forest Supervisor, Faye Krueger, Regional Forester of Region One of the U.S. Forest Service, United States Forest Service, an agency of the U.S. Department of Agriculture, and United States Fish & Wildlife Service, an agency of the U.S. Department of the Interior, Defendants.

No. CV 13–129–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Signed Dec. 8, 2014.

Timothy M. Bechtold, Bechtold Law Firm, Rebecca Kay Smith, Missoula, MT, for Plaintiffs.

Mark Steger Smith, Office of the U.S. Attorney, Billings, MT, Ethan Eddy, U.S. Department of Justice, Washington, DC, for Defendants.

ORDER

DONALD W. MOLLOY, District Judge.

Defendants have moved pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for clarification of this Court's Judgment and Order of September 25, 2014, (Docs. 51 and 52), which granted in part and denied in part the parties' cross-motions for summary judgment. For the reasons discussed below, Defendants' motion (Doc. 66) is granted in part and denied in part.

Pursuant to Rule 59(e), a court may alter or amend its judgment upon the mo-

tion by a party. Such a motion may be granted if the court is presented with newly discovered evidence, if the court committed clear error in its original decision, to prevent manifest injustice, or to account for an intervening change in controlling law. *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir.2001). Federal district courts enjoy broad discretion in evaluating motions brought under Rule 59(e). *McDowell v. Calderon,* 197 F.3d 1253, 1256 (9th Cir.1999) (en banc). "A post-judgment motion for clarification requesting a court to interpret the scope of its injunction is properly made under Rule 59(e)...." *Capacchione v. Charlotte–Mecklenburg Schs.,* 190 F.R.D. 170, 175 (W.D.N.C.1999) (citing *Birdsong v. Wrotenbery,* 901 F.2d 1270, 1271–72 (5th Cir. 1990)).

Defendants raise three areas in which they believe clarification is necessary, including: (1) the nature of the injunction as it relates to the Agreed Operating Procedures and the extent of the directive to comply with the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA"); (2) the effect of the injunction on site-specific projects; and (3) the steps that Defendants are required to take on remand in regards to the wolverine. Plaintiffs contend this Court's earlier order is clear on its face. In light of the concerns raised in Defendants' motion and Plum Creek Timber Company's motion for leave to file an amicus brief, (Doc. 70), Defendants are entitled to clarification of the scope of this Court's previous order.

## A. Agreed Operating Procedures

Pursuant to this Court's order of September 25, 2014, the Forest Service is required to comply with the consultation requirements of Section 7 of the ESA with respect to those protected species affected on the lands covered by the Agreed Operating Procedures. Likewise, the Forest Service is required to follow the procedures outlined by NEPA for analyzing potential environmental effects, reasonable alternatives, and cumulative impacts on those lands subject to the Agreed Operating Procedures. The specific nature and extent of these analyses are dictated by applicable statutes, implementing regulations, and case law.

Existing site-specific projects approved or accepted pursuant to the Agreed Operating Procedures for which ground-disturbing activities were underway before the entry of this Court's September 25 Order may proceed as planned. Until the necessary analysis under NEPA and the ESA is complete, the Forest Service is enjoined from authorizing or accepting Harvest Plans for site-specific projects on the 111,740 acres subject to the Agreed Operating Procedures, including allowing such projects to proceed by default due to the Forest Service's failure to respond to a Harvest Plan.

Until the requisite analyses are performed, any project conducted on the 111,740 acres pursuant to the Agreed Operating Procedures will be at risk of violating Section 9 of the ESA should any take result. Defendants have raised concerns in their briefing that the Court's ruling in this matter threatens to unravel the Legacy Lands donation. Such fears appear premature at this juncture as, at this stage, the Court has compelled no substantive changes to Agreed Operating Procedures but merely required the Forest Service to take the procedural steps obligated by law. *See Seattle Audubon Socy. v. Moseley,* 798 F.Supp. 1494, 1497 (W.D.Wash.1992) ("Difficulty of compliance will not permit an agency to avoid its duties under NEPA."). In any case, the Forest Service's argument regarding the difficulties and potentially adverse conse-

quences of complying with the law carry little weight here, where the troubles complained of resulted from the Forest Service's failure to follow the law in the first instance. Had the Forest Service conducted the requisite analysis prior to taking agency action through approving the Agreed Operating Procedures, the agency would not be in its current predicament.

## B. Site–Specific Projects

The Court has reconsidered and amends Analysis Sections I(A)(3) and I(B)(2) of its September 25 Order discussing site-specific projects. The Court's conclusion regarding the required level of analysis for site-specific projects is withdrawn. Pending the outcome of the required NEPA and ESA analyses relative to the Agreed Operating Procedures and in view of the fact that no site-specific activities are planned in the Project area, the Court makes no finding with respect to the legal necessity of ESA and NEPA analyses of site-specific projects in the 111,740 acres covered by the Agreed Operating Procedures.

## C. Wolverines

Absent a proposal to list the wolverine, the Forest Service is currently under no obligation to confer or consult with the Fish and Wildlife Service regarding the effects on the species. *See Alliance for the Wild Rockies v. Austin,* 55 F.Supp.3d 1294, 1309–10, 2014 WL 5439589, *12 (D.Mont. Oct. 28, 2014).

IT IS SO ORDERED that Defendants' motion (Doc. 66) is GRANTED to the extent outlined above and DENIED in all other respects.

IT IS FURTHER ORDERED that Plum Creek Timber Company's motion for leave to file an amicus brief in support of Defendants' motion for clarification (Doc. 70) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion to extend the deadline by which to file a response to Plaintiffs' motion for attorneys' fees (Doc. 72) is GRANTED. Defendants must file their response to Plaintiffs' motion for attorneys' fees on or before sixty (60) days after the date this Order is entered, or in the event an appeal is filed, sixty (60) days after appeal resolution or entry of final judgment of the Appellate Court.

IT IS ORDERED that Defendants' motion to shorten the time in which Plaintiffs have to respond to Defendants' motion to extend the deadline (Doc. 75) is DENIED as MOOT.